UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Door Co. Environmental Energy LLC,    Case No. 24-26772-beh

                  Debtor.                                       Chapter 11

**DECISION AND ORDER DENYING DEBTOR'S REQUEST TO REINSTATE EXCLUSIVITY PERIOD AND SETTING STATUS CONFERENCE**

      Like a modern-day Rumpelstiltskin, debtor Door County Environmental Energy, LLC (DCEE) is in the business of turning spoils into profit. DCEE owns and operates an anaerobic digester, which converts methane from cow manure into renewable natural gas (RNG).[1] The gas produced by DCEE's digester is "raw," meaning it cannot be sold for consumption and injected into the natural gas grid for public use. To transform this raw biogas into "pipeline-quality" gas—i.e., "gas that meets certain agreed-to requirements and pipeline specifications" and is "suitable (and profitable) for use as transportation fuel or for injection into the natural gas grid," ECF No. 148-3, at 12; ECF No. 115, at 2—DCEE relies on the processing services of Nacelle Logistics, LLC and Nacelle Biogas Equipment Funding 2019, LLC (collectively, "Nacelle").

      Nacelle owns and operates a gas upgrading plant adjacent to DCEE's digester that conditions and purifies the raw biogas by removing carbon dioxide, hydrogen sulfide, and other impurities, and converts it into useable renewable natural gas. DCEE pays Nacelle a monthly fee of $110,000 for its services (subject to adjustment based on performance, per the parties' service contract), which also covers costs for the use and maintenance of Nacelle's gas upgrading equipment.

---

[1] The cow manure is sourced from S&S JerseyLand Dairy, LLC, a dairy farm near Sturgeon Bay, Wisconsin (on which the digester is located), which holds a 60% membership interest in the debtor.

1

In its Chapter 11 plan of reorganization, DCEE proposes to reject the service contract with Nacelle within one year of the effective date of the plan and transition to a new (yet-to-be identified) service provider to perform the same work. Nacelle contends that rejecting its contract would be a disastrous mistake: "Without the equipment provided, operated, serviced, and maintained by Nacelle, and without Nacelle's expertise, the Debtor would not be able to convert the raw biogas to RNG and would therefore be unable to generate revenue sufficient to service its debt, much less operate as a going concern." ECF No. 148-2, at 2.[2]

Alarmed by DCEE's intentions to engage a new, unidentified service company to perform its gas upgrading services, as well as DCEE's proposal to build and operate a second digester, *see* ECF No. 145, at 14–15, Nacelle seeks to advance its own disclosure statement and plan for voting. To that end, Nacelle has filed a motion (along with copies of its proposed disclosure statement and plan) asking the Court to (1) conditionally approve its proposed disclosure statement and (2) schedule a combined hearing on confirmation of its plan and final approval of its disclosure statement. ECF No. 148-2, at 3.

DCEE objects. Although the debtor no longer has an exclusive right to file a plan under 11 U.S.C. § 1121(c)(3) (discussed *infra*), DCEE urges the Court to give its pending plan primacy over any competing plans, including Nacelle's, by either (1) reinstating DCEE's exclusive right to file a plan and prohibiting the filing of other plans, or (2) holding proceedings on any competing plans in abeyance until the conclusion of the confirmation hearing on DCEE's plan (currently scheduled for November 20, 2025).

For the reasons that follow, the Court concludes that DCEE's expired plan-filing exclusivity period cannot (or should not) be retroactively reinstated. Nothing prohibits Nacelle from filing its alternate disclosure statement and plan. The Court will schedule a hearing to discuss potential timing and procedures vis-a-vis approval and confirmation of Nacelle's alternate disclosure

---

[2] Nacelle also questions DCEE's ability to reject an executory contract post-confirmation, asserting that DCEE's plan is patently unconfirmable as a result.

2

statement and plan, and as further described, adjust timing for consideration of DCEE's plan.

## RELEVANT FACTUAL BACKGROUND

DCEE filed its Chapter 11 petition on December 19, 2024. From the outset, Nacelle has been less-than-optimistic about DCEE's ability to pay its debts as they come due, achieve its revenue projections, and emerge successfully from reorganization.

In early February 2025, DCEE filed a motion for approval of a stipulation with its secured lender, German American State Bank (n/k/a Foresight Bank), authorizing DCEE's interim use of the bank's cash collateral. ECF No. 34. Nacelle objected to the motion, partly on the grounds that DCEE's proposed budget failed to account accurately for the payments DCEE was required to make to Nacelle under the parties' service contract. ECF No. 38, at 2. To address these and other concerns, DCEE (along with German American State Bank) negotiated terms with Nacelle and ultimately filed a stipulated order authorizing DCEE's use of cash collateral, first on an interim basis, and then on a final basis. *See* ECF Nos. 44, 45, 50, 98, 99 & 102. Under the terms of the order authorizing DCEE's final use of cash collateral, DCEE was required to pay Nacelle its monthly service fee of $110,000 per month (plus reasonable costs) "during the pendency of this Stipulated Order."[3]

---

[3] The stipulated order authorized DCEE, "on a final basis," to use German American State Bank's cash collateral as provided in the attached budget (which included weekly income and expense projections through July 25, 2025), as well as "such future budgets as approved by [German American State Bank] in writing . . . through and including the effective date of [any confirmation order], or the termination of the Debtor's authority to use Cash Collateral pursuant to Paragraph 9 hereof . . . ." ECF No. 102, at 7. Paragraph 9, in turn, permitted the bank to terminate the debtor's authority to use cash collateral via written notice upon the occurrence of an "Event of Default," which, per Paragraph 8, meant: (a) DCEE's failure to remedy noncompliance with any provision of the order within five days after receiving written notice from the bank; (b) dismissal or conversion of the case; (c) the appointment of a trustee or examiner; (d) DCEE's failure to obtain confirmation of a proposed plan of reorganization by October 31, 2025; and (e) the invalidity of any material provision of the order. *Id.* at 9–10.

Nacelle claims that the debtor's authorized use of cash collateral under the final order ended on July 31, 2025. *See* ECF No. 162, at 8. That is not consistent with the language of the order quoted above, nor the general understanding of the word "final" in this context, i.e., final for purposes of the pendency of this Chapter 11 case.

On April 18, 2025—120 days after the petition date—DCEE filed its first proposed disclosure statement and plan of reorganization. ECF Nos. 91 & 92. The Court entered an order scheduling a final hearing on the adequacy of the disclosure statement for June 16, 2025, and requiring that any objections to the disclosure statement be filed by June 2, 2025. ECF No. 103. Nacelle and two other creditors (U.S. Venture, Inc. and Foxland Incorporated) objected to DCEE's disclosure statement by the June 2 deadline. *See* ECF Nos. 114–116.

Two days later (on June 4), counsel for DCEE filed correspondence asking the Court to continue the June 16 hearing for two weeks, to June 30, 2025. ECF No. 117. The stated purpose of the adjournment was to allow DCEE additional time to amend its plan and disclosure statement to (1) incorporate the terms of a settlement-in-principle with German American State Bank on the treatment of its claim, and (2) resolve certain creditor objections. *Id.* ("The Debtor believes that a number of the objections can be addressed by amending the Disclosure Statement, and that the hearing on the adequacy of the Disclosure Statement would be a more efficient use of the Court and parties' time if it were held after the amendments have been made and provided to the Objecting Parties in advance for review (and potential approval).").[4]

---

[4] In reciting the "applicable facts" in its brief, DCEE omits both the Court's original scheduling of the June 16 hearing, and DCEE's June 4 letter-request to postpone that hearing to June 30:

> After the Debtor's Chapter 11 Plan . . . and Disclosure Statement . . . Dated April 18, 2025 were timely filed, the Court entered a scheduling order providing that objections to the adequacy of the Disclosure Statement were required to be filed by June 2, 2025.
>
> On June 2, 2025, objections to the adequacy of the Disclosure Statement were filed by Creditors Nacelle Biogas Equipment Funding 2019, LLC and Nacelle Logistics, LLC, U.S. Venture, Inc., and (prior to June 2) Foxland Incorporated.
>
> The Court then scheduled June 30, 2025 for a hearing on the adequacy of the Disclosure Statement. The Debtor believed that because the hearing date was scheduled after the deadline for obtaining acceptances, the Court must have intended to continue the Debtor's exclusive period for obtaining acceptances. In the circumstances (and as discussed more fully below), had the Debtor moved for such an extension for cause, it is highly likely the Court would have granted it.

ECF No. 159, at 2 (parentheticals and brackets omitted). DCEE's implication—whether intended or not—is that the *Court* bears responsibility for DCEE's failure to timely request an extension of the exclusivity period under 11 U.S.C. § 1121(d)). It is not the role of a bankruptcy court to safeguard a Chapter 11 debtor's statutory exclusivity rights.

The Court granted DCEE's letter request and rescheduled the disclosure statement hearing for June 30, 2025, adding the condition that DCEE "must file its amended disclosure statement and plan no later than June 23, 2025, to allow sufficient time for the Court and parties in interest to review the amendments and, if applicable, for objecting parties to withdraw any pending objections to the original disclosure statement." ECF No. 118.

DCEE filed its amended disclosure statement and plan as directed, ECF Nos. 121 & 22, but none of the objecting creditors withdrew their objections. At the June 30 disclosure statement hearing, Nacelle and U.S. Venture strongly maintained their original objections, while counsel for DCEE expressed surprise at what he perceived to be U.S. Venture becoming a "hostile and uncooperative partner" and unwilling to engage in attempts to negotiate. ECF No. 125 (hearing audio). After a lengthy back-and-forth between counsel on various contested issues—some of which bore no direct link to the substance of the pending disclosure statement objections—the Court called a recess to enable the parties to discuss their disagreements more constructively, and off the record. *Id.* During the recess, the parties agreed on a schedule for resolving disclosure statement disputes, which they later relayed to the Court for approval, as reflected in the Court's June 30, 2025, minute entry:

> [N]o later than July 11, 2025, the objecting parties must provide the debtor proposed amendments/inserts to the disclosure statement (and, if applicable, the plan); no later than August 1, 2025, the debtor must file an amended disclosure statement (and, if applicable, plan). The Court will hold an adjourned hearing on the further amended disclosure statement on 08/12/2025 at 02:30 PM in the United States Courthouse at 517 East Wisconsin Avenue, Room 150, Milwaukee, Wisconsin.

ECF No. 128. At the time, says DCEE, it "continued to believe that the Court intended exclusivity to continue," adding: "No party asserted on the record that exclusivity had been terminated, and the Debtor continued to act in good faith

to resolve objections and proceed with the Court schedule in the belief that exclusivity continued." ECF No. 159, at 3.[5]

DCEE filed its second amended disclosure statement and plan on August 1, 2025. At the August 12 hearing to consider approval of that statement, Nacelle and U.S. Venture renewed their objections. They asserted that crucial information was still missing (such as details about how DCEE intends to replace Nacelle as its service provider, and DCEE's future management and governance). The Court considered the parties' positions and the nature and extent of the amendments requested, and agreed that *some*, but not all, of the disclosures the creditors demanded were necessary to provide adequate information for voting. Subject to the revisions stated on the record, the Court approved DCEE's disclosure statement for solicitation purposes and scheduled a final confirmation hearing for October 16, 2025.

At the conclusion of the August 12 hearing, counsel for Nacelle advised the Court that Nacelle was exploring the possibility of submitting an alternative plan, in light of the expiration of the debtor's plan-filing exclusivity period under section 1121(c)(3). There was colloquy on the record between counsel about whether exclusivity had lapsed (DCEE claimed that it had not, at least then) and the Court declined to entertain further argument, considering the question premature.

On September 4, 2025, Nacelle filed a motion for conditional approval of its alternate disclosure statement and a combined hearing on confirmation of its plan and final approval of its disclosure statement. ECF No. 148.

The Court ordered additional briefing, and the matter is now ripe for decision.

---

[5] In footnote, counsel for DCEE acknowledges that "counsel to Nacelle did suggest in a conference room [during the recess at the June 30 hearing] that exclusivity had expired," but that DCCE's counsel believed Nacelle "was referring only to the 120-day period for filing a plan, with which Debtor had complied, and not the period for obtaining acceptances." ECF No. 159, at 3, n.1.

6

## DISCUSSION

Section 1121 of the Bankruptcy Code prescribes who may file a Chapter 11 plan and when. Under § 1121(b), only the debtor may file a plan during the first 120 days after the order for relief. 11 U.S.C. § 1121(b). If the debtor files a plan within that initial 120-day period, § 1121(c)(3) affords the debtor an additional 60 days of exclusivity within which to obtain acceptance of the plan, without having to contend with competing plans. 11 U.S.C. § 1121(c)(3) ("Any party in interest . . . may file a plan if and only if . . . the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief."). A bankruptcy court may enlarge (or reduce) these 120-day and 180-day "exclusivity periods" for cause, but only "on request of a party in interest made within the respective periods . . . and after notice and a hearing." 11 U.S.C. § 1121(d)(1).

DCEE commenced this case on December 19, 2024. It filed its original plan of reorganization within 120 days of the petition date (April 18, 2025) but failed to obtain acceptance of that plan (or move to enlarge the time to do so under § 1121(d)(1)) within 180 days of filing (by June 17, 2025).

DCEE now concedes that it missed the June 17 acceptance deadline of § 1121(c)(3), and therefore exclusivity has expired, but says that it did so inadvertently and in a good faith effort to resolve the objections to its disclosure statement. In the circumstances, argues DCEE, the Court can and should retroactively reinstate its exclusive right to file a plan. *See* ECF No. 159, at 5 ("Where, as here, the Court and most parties were proceeding in good faith in the belief that exclusivity continued, and substantial progress was being made, the Court may and should retroactively reinstate exclusivity.").

In support, DCEE relies on two cases: *Mid-Continent Racing & Gaming Co. I v. Sunflower Racing (In re Sunflower Racing)*, 218 B.R. 972 (Bankr. D. Kan. 1998), and *PAH Recovery Holdings, LLC v. Pan Am Hosp. Corp (In re Pan Am Hosp. Corp.)*, 2006 WL 8434254, 2006 U.S. Dist. LEXIS 101219 (S.D. Fl. Sept. 5, 2006). Neither case advances the debtor's argument.

*Sunflower Racing* involved a creditor group's appeal of a bankruptcy court order denying its request to have its competing plan set on the same confirmation timeline as the debtor's. The creditor group filed its plan roughly one week after the bankruptcy court ruled that the exclusivity period had terminated (and two weeks after the debtor filed its own plan) and simultaneously asked for approval of its disclosure statement and permission to disseminate its competing plan for voting. 218 B.R. at 974. The bankruptcy court denied the motion, citing concerns of delay and confusion, and the creditor group appealed. *Id.* at 974–75.

According to DCEE, on appeal, the district court "held that Section 105, in conjunction with Section 1121, grants the court the authority to grant a 'de facto reinstatement of a debtor's exclusive rights.'" ECF No. 159, at 5–6 (citing *Sunflower Racing*, 218 B.R. at 977). To the contrary, the holding of *Sunflower Racing*—which actually was that the district court lacked jurisdiction over the appeal—reflects the district court's view that a bankruptcy court is *not* permitted to do what DCEE asks here, i.e., retroactively reinstate the exclusivity periods of section 1121. In *Sunflower Racing*, the creditor group attempted to convince the district court that jurisdiction existed by classifying the bankruptcy court's order as a reinstatement of exclusivity under 11 U.S.C. § 1121(d) (and thus an appealable interlocutory order under 28 U.S.C. § 158(a)(2)).[6] The district court found this argument unpersuasive. Focusing on the jurisdictional requirement that the order on appeal be "issued under § 1121(d)," the district court observed that the bankruptcy court lacked the ability to have issued such an order: "Indeed, [the bankruptcy judge] did not have the authority to issue the order under section 1121 because the order did not decide a request by a party to extend or reduce the exclusivity periods 'made within the respective periods.'" 218 B.R. at 977 (quoting 11 U.S.C.

---

[6] 28 U.S.C. § 158(a)(2) grants district courts jurisdiction to hear appeals "from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title."

8

§ 1121(d)). *Sunflower Racing* undermines, not bolsters, DCEE's argument that retroactive reinstatement of statutory exclusivity is possible.

The second case DCEE cites, *In re Pan Am Hosp. Corp.*, likewise is unhelpful. DCEE characterizes this decision as "affirm[ing] [a] bankruptcy court's reinstatement of exclusivity on similar facts." ECF No. 159, at 6. But the "reinstatement" to which DCEE alludes was *not* the resurrection of a lapsed deadline under § 1121(d); instead—as found by the district court—it was a retroactive enlargement of a deadline set by the bankruptcy court's own prior order (and thus a permissible extension under Bankruptcy Rule 9006(b) upon a showing of excusable neglect). 2006 WL 8434254, at *5. Critically, the district court declined to rule on the merits of the position the debtor now takes—that the exclusivity periods of section 1121 can be reinstated on a showing of excusable neglect, under Rule 9006(b) or otherwise:

> Importantly, this case does not involve a scenario where the debtor failed to timely move for an enlargement of the ***initial*** deadline for soliciting votes on a plan. As such, [the bankruptcy judge] had complete authority to adjust the deadline he himself had established, assuming grounds for such extension existed. Because I conclude that the Bankruptcy Court could consider excusable neglect in extending one of its own prior orders, I need not decide whether Rule 9006(b) applies to gaps in exclusivity from the outset, nor must I reach Appellees' remaining arguments on Rule 9006(b)'s applicability to § 1121(d).

*Id.* (emphasis in original).

Unlike the debtor in *Pan Am Hosp.,* DCEE did *not* timely move for an enlargement of the initial deadline for soliciting votes on its plan. Rather than present "similar" facts, *Pan Am Hosp.* is dispositively different. Neither *Pan Am Hosp.* nor *Sunflower Racing* support DCEE's argument that the Court may reinstate exclusivity retroactively.

Finally, while not directly bearing on the question of retroactive exclusivity, the Court must address an erroneous assumption repeated throughout DCEE's brief and other recent filings (*e.g.*, ECF No. 164): that all classes in DCEE's plan are *un*impaired, therefore not entitled to vote and

9

deemed to have accepted the plan. *See* ECF No. 159, at 6 ("Acceptances [of the third amended plan] were obtained within the meaning of the statute as of August 22, 2025, the date that the Debtor served its Plan and Disclosure Statement, because all classes are unimpaired or reinstated, and are therefore deemed to have accepted the Plan.").

Section 1124 of the Bankruptcy Code provides that a class is impaired under a plan (and therefore entitled to vote) "unless, with respect to each claim or interest of such class, the plan . . . leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). DCEE's third amended disclosure statement and plan propose that Class 3 general unsecured claims "shall be paid a 100% dividend, on a pro rata basis, with a per annum interest rate of 7.5%, in monthly payments in the aggregate estimated amount of $68,433.80, **over three (3) years** . . . until paid in full." ECF No. 145, at 42 (emphasis added); *see also* ECF No 146, at 6.

Deferred payment constitutes impairment. "Generally, a class is impaired when the *legal,* equitable and contractual rights out of which [a creditor's] claim arises are altered in *any* way." *In re G.L. Bryan Invs., Inc.,* 340 B.R. 386, 390 (Bankr. D. Colo. 2006) (quoting *In re Dean,* 166 B.R. 949, 954 n.3 (Bankr. D.N.M. 1994)) (internal quotation marks omitted, emphasis in original). "Bottom line: if the Debtor intends to reduce the interest rate and/or pay the unsecured creditors over time . . . the unsecured creditors are impaired creditors under the Bankruptcy Code." *Id.* at 389. *See also In re New Midland Plaza Assocs.*, 247 B.R. 877, 896 (Bankr. S.D. Fla. 2000) (a class of claims is impaired if not paid in full with interest on the effective date); *In re Valley View Shopping Center,* 260 B.R. 10, 32–33 (Bankr. D. Kan. 2001) (unsecured creditors were impaired under a plan event though the claims were paid in full, without interest, 90 days after the effective date of the plan).

The Court raised the issue of Class 3 impairment with counsel for DCEE at the August 12, 2025, hearing, questioning whether classifying Class 3 as

unimpaired was correct, and noting that deferment is a form of impairment.[7] Counsel for DCEE acknowledged the error and represented that DCEE would be amending its plan and disclosure statement in any event, so would clarify that general unsecured creditors would be asked to vote. *See* ECF No. 138 (hearing audio). Instead of doing this, it appears DCEE simply added interest to the Class 3 payments, assuming this would cure the class's impairment (while continuing to provide for payment of the claims over three years), and chose not to mail ballots to any holders of Class 3 claims. *See* ECF No. 164. DCEE therefore will need to resolicit votes on its plan (at least from Class 3), and the Court will need to revise the current confirmation schedule.

Turning back to the question of retroactive exclusivity, Nacelle refers the Court to *In re Congoleum Corp.*, 362 B.R. 198 (Bankr. D.N.J. 2007), which directly contravenes DCEE's position. In *Congoleum Corp.*, the bankruptcy court denied the very same request DCEE makes here: "that the exclusivity period to file a plan under 11 U.S.C. § 1121 be reinstated." 362 B.R. at 204. The court first concluded that it "lack[ed] the authority to reinstate exclusivity once that period has elapsed." *Id.* (citing Collier on Bankruptcy ¶ 1121.06 at n. 5 ("there can be no extension [of exclusivity] after the period has expired."); *In re Cramer,* 105 B.R. 433 (Bankr. W.D. Tenn. 1989) (court found that once the exclusivity has expired the court is powerless to grant further extensions); and *In re Perkins,* 71 B.R. 294 (W.D. Tenn. 1987) ("once the exclusive period and extensions thereto have expired, the debtor cannot resurrect his protected status in order to battle competing plans.")). The court then added that, even if reinstatement were possible, the debtors had failed to show cause for such relief. *See id.* at 205 (expressing its belief that "the Debtors' chosen path is a dead end," and its doubt that "reinstating exclusivity will advance the goal of obtaining a confirmable plan of reorganization").

---

[7] At the time, DCEE was operating under its second amended disclosure statement and plan, which likewise provided for deferred payment of Class 3 claims in full over three years, albeit without interest. *See* ECF No. 131, at 21.

*Congoleum Corp.* represents the better view. Section 1121(d)(1) mandates that a request to extend an exclusivity period be made *before* the period expires. Rule 9006(b), which allows retroactive relief upon a showing of excusable neglect, applies only to deadlines set by the bankruptcy rules and court orders—not deadlines set by the Code—so is of no assistance here.

Finally, even assuming the Court could reinstate exclusivity based on a finding of excusable neglect, DCEE has not convinced the Court that this kind of extraordinary relief is warranted. The statutory deadlines of section 1121 are plain and easily calculable. Yet, in Nacelle's words:

> Debtor views exclusivity – a significant benefit conferred on a reorganizing debtor – as something akin to a state of mind (what the parties "believe" and what the parties may "think" the Court "intended") rather than a straightforward exercise of calendaring and time management, as set forth under the clear language of 1121(d)(1).

ECF No. 162, at 2. More problematic is that DCEE relies on events that occurred *after* the June 17 expiration of its exclusivity deadline (most notably, the scheduling agreement reached by the parties at the June 30 hearing) as evidence of its belief that exclusivity was meant to continue.

Finally, as noted above, DCEE's plan as it stands cannot be confirmed for procedural reasons: Class 3, which currently is impaired, was not given the opportunity to vote. The Court will discuss rescheduling voting procedures on DCEE's plan at the forthcoming status conference.

## CONCLUSION AND ORDER

For these reasons, the Court must deny DCEE's request to reinstate its plan-filing exclusivity and/or prohibit the filing of competing plans. The Court will entertain additional argument from the parties regarding the timing of a confirmation schedule on Nacelle's alternate disclosure statement and plan (and whether accelerated review or a combined hearing is warranted).

Accordingly,

IT IS ORDERED that DCEE's request to reinstate its exclusivity period under 11 U.S.C. § 1121 is DENIED.

IT IS FURTHER ORDERED that the Court will hold a status conference on **October 14, 2025, at 1:30** PM in Room 150 of the United States Courthouse, 517 E. Wisconsin Ave., Milwaukee, WI 53202.

Dated: October 3, 2025

By the Court:

Beth E. Hanan
United States Bankruptcy Judge